THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| v. | Case No. 1:23CR218 |
| | The Hon. Randolph D. Moss |
| SCOTT COLUMBUS, | |
| | Sentencing Date: January 31, 2024 |
| Defendant. | |

**DEFENDANT'S POSITION ON SENTENCING**

COMES NOW, the Defendant, Scott Columbus ("Mr. Columbus") by and through counsel, and pursuant to Rule 32 of the Federal Rules of Criminal Procedure and this Court's policies and procedures regarding sentencing, states that he has received and reviewed a copy of the Presentence Investigation Report ("PSR") filed in this case with counsel and has no objections or unresolved corrections thereto. In consideration of same, as well as of 18 U.S.C. §3553(a) ("3553") and applicable case law, Mr. Columbus respectfully presents his Position on Sentencing as set forth below:

**APPLICABLE LAW ON SENTENCING**

The Court is mandated to exercise discretion in the imposition of a sentence that is "sufficient, but not greater than necessary" to achieve the enumerated objectives of criminal sentencing, and this exercise must include a consideration of each of the factors laid out in 3553. *See Kimbrough v. United States*, 552 U.S. 85 (2007); *Gall v. United States*, 552 U.S. 38 (2007); *Nelson v. United States*, 555 U.S. 350 (2009).

**POSITION ON APPLICATION OF 18 U.S.C. § 3553(a) FACTORS**

I.   *The Nature and Circumstances of the Offense*

1

Mr. Columbus came to D.C. for one reason: because Ms. Fatta wanted a ride to the rally. She told him she would "be his girlfriend" if he gave her a ride, and so Mr. Columbus agreed. *See* PSR at para. 46.  Mr. Columbus had never before (or since) traveled out of state. He has severe anxiety driving long distances (or at night, or in bad weather) and didn't want to make the trip at all, but he very much wanted Ms. Fatta to be his girlfriend. If only he had known on January 5, 2021 that she would eventually stop speaking to him once he didn't have a car, he'd never have come to D.C. at all.

On January 6, 2021, Mr. Columbus spent a total of three minutes in the capitol building, and although he did hang around outside for another thirty or so minutes after he and Ms. Fatta left the building, he would have as soon left immediately but there was simply no way he would have left without Ms. Fatta due to his own insecurity as well as a sense of obligation to his "girlfriend."

When later questioned by law enforcement, Mr. Columbus' reaction was not that of an unremorseful scofflaw, but rather much like that of a frightened child. He denied being at the capitol that day, offering an extraordinarily unsophisticated "alibi," namely that he and Fatta had turned around and driven home that day instead. He said this out of fear and a naïve belief that it would all go away if he said, "I didn't do it," but he didn't persist and rather quickly admitted his presence at the capitol. He didn't say this because he wasn't remorseful; he said it because he *was* remorseful, and frightened. And while the video does not show Mr. Columbus being literally physically *pushed* into the capitol building, Mr. Columbus was in a large crowd, and as a result of the various mental and neurological disorders with which he has been diagnosed, he felt that way at the time and remembered it that way later on, because he feels enormous anxiety in crowds. His relating to law enforcement his recollection was therefore not a "lie" told with the

intent to deceive, and again not an indication that he lacks remorse or minimizes his actions with nefarious intent.

    II.       *History and Characteristics of the Defendant*

Mr. Columbus is a 40-year-old man with no criminal history and significant mental and neurological diagnoses. As a young person, he was believed to have a "mood disorder" but in 2004, as noted in the neuropsychological report provided to and cited by the Probation Officer, it was determined instead that he suffers from Major Depression & Dysthymic Disorder, Anxiety Disorder (manifesting as both social anxiety and obsessive-compulsive disorder), Learning Disorders (with reading, spelling, math and written expression), Aspergers,' Paranoid Schizophrenia, and more.  PSR at 11. As a result of his limitations, Mr. Columbus—who receives social security disability income—still lives at home with his mother, and rarely leaves the house, spending most of his time playing video games. He is extraordinarily naïve, has few friends, and presents as *far* younger than his years in terms of emotional intelligence and maturity. He has a very difficult time discerning people's true motives and navigating interpersonal relationships. *See* PSR at para. 41, 54. As a result, he is often taken advantage of—especially by women. *See*, *id.* He was easy to fool, and Ms. Fatta is not the first so-called friend to use Mr. Columbus and ultimately reject him after he has served some purpose, be it financial or otherwise. *Id.*

    III. *The Need for Adequate Deterrence and To Promote Respect for the Law*

Aside from this case, Mr. Columbus has never been in any trouble with the law. Even as a socially awkward individual, with significant diagnoses that are often linked to troubling and sometimes illegal behavior, Mr. Columbus has always been more likely to stay home than go out causing trouble. He wasn't driven or compelled to offend on January 6, 2021, and he is not

3

driven or compelled to re-offend. Mr. Columbus in fact has the utmost respect for law enforcement, and as the victim of a recent attack/mugging, he is also grateful for their service to the community.

As for general deterrence, studies have shown that harsher sentences are *not* a greater deterrent to criminal behavior. *See* Wright, Valerie. "Deterrence in Criminal Justice: Evaluating Certainty vs. Severity of Punishment," (Nov. 2010). For those in society for whom it matters (i.e., those who would be deterred) *the possibility of punishment itself is deterrence*. The Institute of Criminology at Cambridge University found in 1999 that there was no evidence to support the notion that increased sentences resulted in greater deterrence but that there was evidence, from studies of offense rates in particular populations, that the greater the likelihood (or probability) of punishment, the lower the crime rate. *See id.* at 4 *citing* Andrew von Hirsch, Anthony Bottoms, Elizabeth Burney, and P.O. Wikstrom, "*Criminal Deterrence and Sentence Severity: An Analysis of Recent Research*," Oxford: Hart Publishing, 1999.

In other words, people who can be deterred are deterred by the idea of punishment itself. Leading scholars on the subject, Daniel Nagin and Greg Pogarsky, reached a similar conclusion: that "punishment certainty is far more consistently found to deter crime than punishment severity, and the extra-legal consequences of crime seem at least as great a deterrent as the legal consequences." Wright at 4 *citing* Daniel Nagin and Greg Pogarsky. "*Integrating Celerity, Impulsivity, and Extralegal Sanction Threats into a Model of General Deterrence: Theory and Evidence*," Criminology, 39(4), 2001. It is safe to say that the message is being broadcast nationwide and beyond to those who might be inclined to offend in this fashion, to wit: that prosecution and punishment are indeed a virtual certainty, *no matter who you are*.

IV.     The Kind of Sentences Available & Avoiding Disparity

Mr. Columbus agreed to plead guilty early in the process. Had he been one of the "first wave" of defendants charged, he'd have been the beneficiary of the United States Attorney's Office now-abandoned policy of recommending probation for "fast track" cases (individuals who pleaded guilty to misdemeanor charges within a short period of time, thereby saving resources, just as Mr. Columbus has done).

This court has sentenced defendants with similar offense conduct to probation without home incarceration, most notably Mr. Columbus' co-defendant, Ms. Fatta. Ms. Fatta had had prior involvement with the criminal justice system and made troubling posts to social media after leaving the capitol building. She was the driving force for both her and Mr. Columbus' trip to D.C., she entered the capitol ahead of him and he followed behind.  Ms. Fatta was ultimately sentenced to 24 months' probation based on her expression of remorse and mitigating circumstances of her childhood, abusive relationships, and recovery from years of drug abuse. Mr. Columbus has no criminal history—no arrests, no convictions. He is also very remorseful for his actions on January 6, 2021, though as a result of Aspergers' has a very difficult time expressing "enough" emotion. Finally, Mr. Columbus also has had a very difficult life, experienced mistreatment, personal loss, and trauma; he has made repeated attempts at suicide, and been diagnosed with significant disorders that limit his opportunities and keep his world extremely small.

Mr. Columbus has also been participating in mental health treatment through pretrial services and has been fully compliant despite significant difficulties with transportation due to car trouble and weather conditions. He will, if given the chance, be fully compliant with any and all conditions of probation, as well.

## CONCLUSION

WHEREFORE, based on the foregoing, Mr. Columbus respectfully prays that he be sentenced to a period of probation of no longer than 24 months. Such a sentence adequately accounts for the seriousness of Mr. Columbus' offense, promotes general and specific deterrence, as well as respect for the law, and avoids unwarranted disparities in sentencing.

Respectfully Submitted,

SCOTT COLUMBUS
By Counsel

THE LAW OFFICE OF LANA MANITTA, PLLC

By:_____/s/_____.
Lana Manitta, VSB #42994
140B Purcellville Gateway Drive, #511
Purcellville, VA 20132
(703) 705-4428
FAX (703) 705-4429
Lmanitta@Manittalaw.com
Counsel for Scott Columbus

## CERTIFICATE OF ELECTRONIC FILING

I HEREBY CERTIFY THAT on January 24, 2024, I filed the foregoing with the clerk of the court using the CM/ECF system which will forward an electronic copy to all counsel of record.

By:_____/s/_____.
Lana Manitta, VSB #42994
140B Purcellville Gateway Drive, #511
Purcellville, VA 20132
(703) 705-4428
FAX (703) 705-4429
Lmanitta@Manittalaw.com
Counsel for Scott Columbus